IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| GLOBAL BROTHER SRL, a Romanian Societate cu Raspundere Limitata, Ghiozdanului 22A Lighthouse Residence Bucharest, Romania | ) ) ) ) ) ) | Case No.: Judge |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Munrow TATTON an individual and d/b/a "Zolivi.com," 2245 Sunset Dr., Wickliffe, OH 44092 | ) ) ) ) ) | |
| Defendant. | ) | |

### GLOBAL BROTHER SRL COMPLAINT

Global Brother SRL ("Plaintiff"), by and through its undersigned counsel, files this Complaint against, Defendant(s), Munrow TATTON an individual and d/b/a "Zolivi.com" ("Defendant"), and in support thereof states the following,

### NATURE OF THE ACTION

This is a civil action for claims arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. and for associated intellectual property and business violations under federal and Ohio law. This action is to address, inter alia, the unauthorized reproduction, distribution, advertising, use, and display of Plaintiff's protected works on-line, and subject to the Digital Millenium Copyright Act (DMCA).

1.      Plaintiff is a worldwide publisher of popular books directed to survival skills, health and wellness, and related subjects of interest. It has invested substantial resources in creating, distributing, advertising and protecting its books, contents, and images thereof – as according to the protections granted by U.S. copyright, trade dress, trademark, and related intellectual property rights (the "Plaintiff's Works").

2.      Defendant, without authorization or license, engaged in the unauthorized reproduction, distribution, advertising, use, and display of Plaintiff's Works, including at https://zolivi.com, to misrepresent source, misrepresent rights, mislead and divert consumers in this District, causing confusion, financial and reputational harm to Plaintiff and Plaintiff's Works.

3.      Through this action, Plaintiff seeks to protect its exclusive rights and prevent harm to continue to be caused by Defendant. Plaintiff seeks injunctive relief, statutory damages, actual damages, attorneys' fees, and other relief as just and proper.

## JURISDICTION AND VENUE

4.      This Court possesses subject matter jurisdiction over the action under 28 U.S.C. § 1331, as the claims arise under the Constitution, laws, or treaties of the United States, including but not limited to the Copyright Act (17 U.S.C. § 101 et seq.) and the Lanham Act (15 U.S.C. § 1051 et seq.).

5.     This Court further has exclusive jurisdiction over the claims arising under federal copyright and trademark law under 28 U.S.C. § 1338(a), which grants original jurisdiction to federal district courts for all civil actions arising under any Act of Congress relating to copyrights, trademarks, or unfair competition.

6.     This Court also has jurisdiction under 15 U.S.C. § 1121, which provides that the district and territorial courts of the United States shall have original jurisdiction over all actions arising under the Lanham Act.

7.     This Court additionally has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), as the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) as Defendant's direct unlawful activities toward this District, including conducting business, advertising, selling, and/or distributing infringing products within this District.

9.     Defendant is subject to this Court's jurisdiction because, pursuant to the Digital Millennium Copyright Act (DMCA) Counter-Notice, and public records, Defendant is located in this District, expressly consent to jurisdiction in this District, and avail themselves to this court otherwise.

## PARTIES

10.     Plaintiff, Global Brother SRL, is a Romanian Societate cu Raspundere Limitata (SRL) organized and existing under the laws of Romania, with principal place of business located at Ghiozdanului 22A Lighthouse Residence, Bucharest, Romania (the "Plaintiff"). The Plaintiff is engaged in the business of creating, publishing, selling, distributing, and advertising books in the United States and internationally. Plaintiff owns and holds all rights, title, and interest in and to the intellectual property associated with its books, including "THE AMISH WAYS" (see, e.g., Exhibit A , Plaintiff registered U.S. Copyright abstracts and image of book, cover). Rights associated with the foregoing include trade dress and U.S. common law trademark rights.

11.     Defendant, Munrow TATTON, is an individual located in this District, and conducts business at 2245 Sunset Dr., Wickliffe, Ohio 44092. He is in the business of retailing various goods including books, which he causes to be sold, advertised and delivered in U.S. commerce, including to residents of this State. He controls and owns all or part of the website https://zolivi.com, which website displayed content complained of herein (the "Offending Website"). Defendant, Munrow TATTON as self and doing business as "Zolivi.com" filed the DMCA Counter-Notice that caused the instant action to be filed. The Counter-Notice asserted Munrow TATTON as the responsible party (Exhibit B, consisting of the Offending Website and Counter-Notice and email).

4

FACTUAL BACKGROUND

12.     Plaintiff is the exclusive owner of all rights, title, and interest in and to book "THE AMISH WAYS" based on, but not limited to its registered copyrights, common law trademark rights and distinctive trade dress:

• TRADEMARK: Plaintiff has acquired common law trademark rights in the title and cover for its book "THE AMISH WAYS" through continuous and extensive use in commerce, resulting in strong consumer recognition. It is e.g., currently the #1 best seller on Amazon in Homeopathy Medicine: https://www.amazon.com/Amish-Ways-Eddie-Swartzentruber/dp/B0DK237X8F:



• TRADE DRESS: Plaintiff's trade dress includes the distinctive design comprising its title, layout, font style, color scheme, and associated imagery. Its trade dress is inherently distinctive and has acquired secondary meaning in the marketplace, signifying to consumers that the origin is from Plaintiff.

5

• COPYRIGHT: Plaintiff owns non-U.S. and U.S. Copyright Registrations for "THE AMISH WAYS" inter alia, the book, text, artwork, videos and website as in TXu002445650, TXu002446440, TXu002465741, TXu002443674, PA0002505508, TXu002445660, VAu001539184, TXu002443678, PAu004246626 and TXu002459756 (Exhibit A, image of cover and U.S. Copyright Office and United States Patent and Trademark Office record abstract, printouts).

13. The book comprises:  title "THE AMISH WAYS." The title appears prominently in bold, rustic serif font at the top. A small horse-drawn buggy icon sits above the title. The background features a golden-hued landscape under a soft, warm sky, suggesting either sunrise or sunset. In the foreground is a detailed farm scene with multiple people tending to a lush vegetable garden. The figures are dressed in traditional Amish clothing—bonnets, long dresses, and suspenders. Fenced plots of land are full of orderly rows of crops. Further back, there are two main buildings: a large, classic white Amish farmhouse with a pitched roof and a wraparound porch and smaller wooden structure, representing a barn or tool shed. Rolling fields and additional houses dot the background, illustrating community life. The scene is bathed in a golden light, lending it an idyllic, almost painterly quality (see e.g., Exhibit A, cover, image following below).



14.    Plaintiff's book has been extensively marketed, distributed, and sold in the United States since at least as early as mid-to-late 2024, generating substantial consumer recognition and goodwill. As a result of this continuous use and promotion, Plaintiff has established enforceable rights in the content, title, design, and associated trade dress.

15.     On or about June 13, 2025, Plaintiff discovered unauthorized version(s) of its book published, advertised for sale, and being sold for profit on the Offending Website https://zolivi.com (the "Offending Use"). The following is a representative image of the Offending Use:



16.     The Offending Use includes what appears as an exact copy of Plaintiff's book, its copyrights, trademark and distinctive tradedress, creating a false impression of affiliation, origin and connection with the Plaintiff and its goodwill. The Offending Use has some differences from Plaintiff's book, namely that it adds additional matter in the offer, "- Survival Secrets." The difference is significant in revealing an intention to avoid detection of unauthorized use, but otherwise insignificant as to the overall impression and purpose.  The Offending

Use being a violation of SHOPIFY user terms, violation of federal and state intellectual property and related laws.

17.     To safeguard its intellectual property rights, mitigate damages and consumer confusion, on or about June 13, 2025, Plaintiff filed a Digital Millennium Copyright Act (DMCA) Takedown notice with SHOPIFY. Following Plaintiffs complaint, the Offending Use was suspended.

18.     On or about June 16, 2025, having waited no time to investigate the claim, the Defendant filed a Counter-Notice, claiming the Takedown was made in error and asserting a "good faith belief" that the Offending Use was lawful. Under SHOPIFY's policy subject to the DMCA, the Offending Use may be reinstated within 14 business days from filing the Counter-Notice, unless Plaintiff files a federal lawsuit (Exhibit B, Counter-Notice, SHOPIFY email).

19.     Between the period of June 16, 2025 – July 1, 2025, Plaintiff sent correspondence via e-mail to Defendant confirming Plaintiff's ownership rights and requested information to seek resolution and avoid litigation. The correspondence was directed at the e-mail address provided in the Counter-Notice and Defendant failed or refused to respond to the Plaintiff's inquiries, which remain ignored at the present requiring this proceeding to avoid the Offending Use from being reinstated.

20.     Plaintiff hereby seeks assistance to enforce its statutory rights, prevent ongoing and future harm, and receive associated damages. Defendant's

wrongful acts, including mocked-up book, associated infringement and advertising, have caused irreparable harm to Plaintiff, its goodwill, and financial interests. Plaintiff has suffered and will continue to suffer damages unless Defendant is enjoined.

CLAIMS FOR RELIEF

COUNT I
COPYRIGHT INFRINGEMENT
[17 US CODE § 501]

21.     Plaintiff realleges and incorporates by reference allegations of ¶¶ 1-20 as though fully set forth herein.

22.     Plaintiff is the lawful owner of valid and enforceable U.S. Copyright Registrations for the book, "THE AMISH WAYS," including its contents and cover artwork, which confer exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, distribute, display, and create derivative works based on the copyrighted material.

23.     Defendant, without authorization or consent, willfully and unlawfully reproduced, distributed, and displayed counterfeits and/or unauthorized copies of Plaintiff's copyrighted materials in violation of 17 U.S.C. § 501 continuously from the time beginning from at least as early as before February 2025, to present. Acts of infringement occurred after the Plaintiff received its copyright registration(s).

24.     Defendant's actions constitute willful infringement as defined under the Copyright Act, entitling Plaintiff to enhanced statutory damages under 17 U.S.C. § 504(c). Under 17 U.S.C. § 505, Plaintiff seeks recovery of its attorneys' fees, costs, and expenses incurred in this action because of Defendant's infringing activities.

25.     As a direct and proximate result of the Defendant's infringing acts, the Plaintiff suffered and will continue to suffer irreparable harm and economic damages for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, the foregoing infringing acts will continue to cause irreparable injury to Plaintiff.

26.     Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting further importing, advertising, using, making, or infringing the protections under Global Brother U.S. Copyright Registrations, and ordering all unauthorized copies that shall exist, to be destroyed or forfeited.

## COUNT II
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### [15 U.S.C. § 1125(a)]

27.     Plaintiff realleges and incorporates by reference allegations of ¶¶ 1-20 as though fully set forth herein.

28.     Plaintiff owns enforceable common law trademarks and trade dress rights in and to the non-functional, unique designs of its books, covers and titles

(the trade dress and title marks collectively referred to as "Plaintiff's Trademarks").

29.     The Plaintiff's Trademarks have been in continuous use in U.S. interstate commerce by Plaintiff prior to any date which can be legally claimed by the Defendant.

30.     Plaintiff's Trademarks are inherently distinctive and/or have acquired distinctiveness and secondary meaning based on substantial promotion, sales, marketing, and use in U.S.  commerce. Consumers associate the unique titles, unique pattern-design of the books as originating exclusively from Plaintiff.

31.     Defendant's unauthorized use of Plaintiff's trade dress, titles, and overall designs constitutes false misleading representations of fact that is likely to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, or approval, false description, and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

32.     As a direct and proximate result of the foregoing acts, Plaintiff has suffered injury, including irreparable injury, and damages, including lost profits, royalties, and other damages in an amount to be determined at trial, and continues to suffer irreparable harm, loss of goodwill, and monetary damages as a direct result of Defendant's unfair competition.

33.     Plaintiff seeks damages, including Defendant's profits, actual damages, and costs, pursuant to 15 U.S.C. § 1117(a), as well as injunctive relief to

prevent further acts of unfair competition. And because Defendant's acts were willful, this is an exceptional case making the Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## COUNT III
## MISREPRESENTATION, COUNTER-NOTICE
### [17 U.S.C. § 512(F)]

34.     Plaintiff realleges and incorporates by reference allegations of ¶¶ 1-20 as though fully set forth herein.

35.     Defendant knowingly and materially misrepresented their rights to distribute and display the books in the Counter-Notice.

36.     Defendant's assertions in the Counter-Notice constitute a violation of 17 U.S.C. § 512(f), as they acted with actual knowledge of the falsity of their claims or reckless disregard for the truth.

37.     As a result of Defendant's misrepresentations, Plaintiff suffered and will continue to suffer damage, including but not limited to costs and attorneys' fees incurred in addressing Defendant's unlawful conduct including but not limited to having to file this complaint.

## COUNT IV
## VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT
### (O.R.C. § 1345.01 et seq.)

38.     Plaintiff realleges and incorporates by reference allegations of ¶¶ 1-20 as though fully set forth herein.

39.     The Ohio Consumer Sales Practices Act (CSPA), O.R.C. § 1345.01 et seq., prohibits unfair, deceptive, and unconscionable acts or practices in connection with a consumer transaction. This statute is designed to protect consumers from suppliers who engage in such unlawful conduct. The statute aims to protect consumers and legitimate business entities from harm caused by such unlawful practices.

40.     Defendant engaged in conduct that violates the CSPA by advertising, offering for sale, and attempting to distribute a counterfeit version of Plaintiff's book, "THE AMISH WAYS." This conduct is unfair and deceptive for the following reasons:

a.      Deceptive Representation of the Book's Origin: Defendant deliberately replicated the title, trade dress, and cover design of Plaintiff's books, misleading consumers into believing the infringing book is either affiliated with, authorized by, or a genuine product of Plaintiff.

b.      False and Misleading Advertising: Defendant used deceptive advertisements on Shopify that prominently displayed a counterfeit version of Plaintiff's books, creating confusion among consumers about the source and quality of the product.

c.      Use of a Knockoff Product to Mislead Consumers: Defendant mimicked Plaintiff's distinctive trade dress and design to unlawfully

capitalize on the goodwill, reputation, and established consumer trust associated with Plaintiff's book.

d.      This tactic was designed to confuse consumers while evading detection by Plaintiff and online platforms such as Shopify.

e.      Harm to Consumers: Consumers who purchased the infringing books received a counterfeit product that was not authorized or endorsed by Plaintiff. This deception caused consumers to suffer financial loss and diminished trust in Plaintiff's brand.

41.      To preserve the integrity of evidence, Plaintiff seeks an injunction to preserve all potentially relevant electronic evidence, including, but not limited to: a) Data from Shopify accounts, including sales records, customer communications, and financial transactions related to the infringing book; b) All financial records connected to the infringing book, including revenue, expenses, and profit calculations; c) Design files, production records, and any related communications concerning the development or manufacture of the infringing book; d) Customer communications and data, including complaints, inquiries, or feedback regarding the infringing book; e) Records of supplier and distributor relationships, including financial data and agreements.

42.      As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff has suffered significant harm, including but not limited to loss of sales and market share due to diverted business, damage to reputation and

15

goodwill, and consumer confusion that undermines trust in Plaintiff's authentic product.

43.     Under O.R.C. § 1345.09, Plaintiff is entitled to recover actual damages incurred as a result of Defendant's violations of the CSPA, including compensation for lost revenue, reputational harm, and other economic injuries.

44.     Plaintiff further seeks equitable relief under the CSPA, including injunctive relief to prevent Defendant from engaging in further deceptive and unfair practices. Such relief is necessary to safeguard Plaintiff's business interests and to protect consumers from ongoing harm.

45.     Pursuant to O.R.C. § 1345.09(F), Plaintiff also seeks recovery of its attorneys' fees and costs incurred in prosecuting this action, as Defendant's conduct constitutes a knowing violation of clearly established consumer protection law under the CSPA.

COUNT V
UNJUST ENRICHMENT (OHIO LAW)

46.     Plaintiff realleges and incorporates by reference allegations of ¶¶ 1-20 as though fully set forth herein.

47.     Defendant has unlawfully benefitted from the unauthorized use of Plaintiff's intellectual property, deriving substantial revenue and goodwill at Plaintiff's expense.

48.    Defendant used Plaintiff's distinctive book title(s), trade dress, and associated goodwill to market and sell unauthorized, counterfeit copies, and/or knockoffs of Plaintiff's "THE AMISH WAYS."

49.    Defendant willfully, knowingly, and with wanton disregard replicated Plaintiff's unique books design. And although there were some changes to the advertisement, they were minor and still included the layout, patterns, and color scheme of Plaintiff, to deceive consumers into purchasing the Defendant's book instead, under the impression that it a genuine "THE AMISH WAYS" book.

50.    By capitalizing on Plaintiff's intellectual property and goodwill, Defendant unjustly obtained significant financial benefits, including but not limited to: Revenue generated from the sale of counterfeit books; Cost savings by avoiding investment in original design, marketing, and branding efforts; and Consumer trust and market recognition built upon Plaintiff's established reputation.

51.    Plaintiff never authorized Defendant to use its intellectual property or to benefit from its reputation and goodwill. Defendant's unauthorized use constitutes unlawful conduct that has harmed Plaintiff financially and reputationally.

52.    Defendant knew or should have known that its actions were unauthorized, unlawful, and performed directly at Plaintiff's expense. Defendant

acted willfully and deliberately to exploit Plaintiff's intellectual property for financial gain, with full knowledge that it had no right to do so.

53.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered significant harm, including Loss of revenue and market share due to diverted sales; Reputational harm caused by consumer confusion and association with counterfeit goods; and Diminished goodwill in the marketplace. Equity and good conscience require that Defendant disgorge all profits and other financial benefits unjustly obtained through their wrongful conduct.

54.    Plaintiff is entitled to restitution of all ill-gotten gains and any other equitable relief deemed just by this Court. Equity demands Defendant should not be permitted to retain the benefits unjustly obtained through their wrongful conduct. Plaintiff is entitled to restitution of all ill-gotten gains and profits, as well as any other equitable relief this Court deems just and proper to prevent Defendant from further unjust enrichment at Plaintiff's expense.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
## (OHIO LAW)

55.    Plaintiff realleges and incorporates by reference allegations of ¶¶ 1-20 as though fully set forth herein.

56.    Plaintiff has established and ongoing business relationships with its customers, distributors, and online retailers, where Plaintiff's book(s) "THE

AMISH WAYS" are sold. These relationships are built on trust, reputation, and consistent delivery of authentic, high-quality products.

57.     Defendant, with knowledge of these relationships, intentionally and unjustifiably interfered with introducing counterfeit goods into the market, diverting sales and eroding consumer trust in Plaintiff's authentic product.

58.     Defendant was aware, or should have been aware, of Plaintiff's business relationships and the goodwill associated with its intellectual property. This knowledge is evidenced by Defendant's deliberate replication of Plaintiff's title, trade dress, and book design, with intentional changes to avoid detection and target, and exploit Plaintiff's customer base and online retail channels.

59.     Defendant intentionally and unjustifiably interfered with Plaintiff's business relationships by engaging in the following actions: Advertising and selling counterfeit versions of Plaintiff's books, thereby diverting sales from Plaintiff's legitimate product; Creating consumer confusion by mimicking Plaintiff's trade dress and title, leading customers to believe they were purchasing Plaintiff's authentic product; Filing a Counter-Notice with SHOPIFY to reinstate their infringing listing, undermining Plaintiff's ability to protect its intellectual property rights and maintain its business relationships.

60.     Defendant's conduct was not privileged, justified, or excused. The actions were willful and malicious, intended to profit at Plaintiff's expense by exploiting Plaintiff's established reputation and business relationships.

61.     As a direct and proximate result of Defendant's tortious interference, Plaintiff has suffered significant harm, including but not limited to: Loss of sales and revenue due to diverted business opportunities; Damage to its reputation and goodwill, as consumers mistakenly associate the counterfeit goods with Plaintiff's brand; Impairment of its business relationships with customers and online platforms such as SHOPIFY, which rely on Plaintiff's ability to deliver authentic and trusted products.

62.     Plaintiff seeks actual and compensatory damages for the financial and reputational harm caused by Defendant's interference. Plaintiff further seeks punitive damages to deter Defendant and others from engaging in similar wrongful conduct, as well as any other equitable relief this Court deems just and proper.

COUNT VII
VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT
(R.C. § 4165.01 et seq.)

63.   Plaintiff realleges and incorporates by reference the allegations of ¶¶ 1–20 as though fully set forth herein.

64.   This claim arises under the Ohio Deceptive Trade Practices Act, R.C. § 4165.01 et seq. The ODTPA prohibits, inter alia, conduct likely to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods, and conduct that causes likelihood of confusion as to affiliation, connection, or association with another.

65. Defendant has used and continues to use deceptive, misleading, and confusing representations by advertising, marketing, and selling counterfeit versions of Plaintiff's book "THE AMISH WAYS," which incorporate Plaintiff's distinctive trade dress, title, and designs.

66. Such conduct is likely to cause consumer confusion as to the source, origin, sponsorship, or approval of the infringing book. Defendant's unauthorized use falsely suggests affiliation with Plaintiff and misleads the public into believing that the counterfeit product is an authentic publication of Plaintiff.

67. Defendant's actions constitute deceptive trade practices under R.C. § 4165.02, including but not limited to:

a. Passing off goods as those of another (R.C. § 4165.02(A)(1));

b. Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods (R.C. § 4165.02(A)(2));

c. Causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with another (R.C. § 4165.02(A)(3)); and

d. Representing that goods have sponsorship, approval, characteristics, uses, or benefits that they do not have (R.C. § 4165.02(A)(7)).

68.   Defendant committed the above-referenced acts with actual knowledge of Plaintiff's ownership of the intellectual property and goodwill associated with the book "THE AMISH WAYS," and willfully engaged in deceptive practices to exploit Plaintiff's reputation.

69.   As a result of Defendant's deceptive trade practices, Plaintiff has suffered damages, including lost sales, injury to its reputation and goodwill, and expenses associated with enforcing its rights.

70.   Plaintiff seeks injunctive relief under R.C. § 4165.03 to restrain Defendant from continuing such deceptive trade practices and seeks all other relief available under the statute, including but not limited to costs and attorneys' fees as permitted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in its favor and against Defendant(s) as follows:

·      Preliminary and permanent injunctive relief prohibiting Defendant from further infringing, unfair competition, and deceptive practices;

·      Statutory damages under the Lanham Act and Copyright Act.

·      Actual damages, including lost profits and compensation for reputational harm.

·      Treble damages for willful violations of the Lanham Act under 15 U.S.C. § 1117.

·  Disgorgement of Defendant's profits from infringing activities.

·  Attorneys' fees, costs, and expenses under 15 U.S.C. § 1117 and Ohio law.

·  An order requiring destruction or forfeiture of all infringing materials in Defendant's possession.

·  Restitution for unjust enrichment under Ohio law.

·  Any additional relief the Court deems just and equitable.

Dated: July 7, 2025

/s/ *James B. Niehaus*
James B. Niehaus (0020128)
jniehaus@frantzward.com
Patrick A. Walsh (0101589)
pwalsh@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
216.515.1660 – Telephone
216.515.1650 – Facsimile

Counsel for Plaintiff, GLOBAL BROTHER SRL